USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Robert Ashley,

            Plaintiff,

    –v–

Correction Officer Gonzalez, et al.,

            Defendants.

19-cv-6282 (AJN)

MEMORANDUM OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

*Pro se* Plaintiff Robert Ashley brings this civil rights action against Defendants Correction Officer Adam Gonzalez, Correction Officer Anthony Dinicola, and Captain Natalia Gerald.[1] Now before the Court is Defendants' motion to dismiss the complaint. For the reasons set forth below, Defendants' motion, Dkt. No. 41, is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

    **A.  Factual Background**

For the purposes of deciding this motion, the Court assumes that all factual allegations contained in Plaintiff's complaint are true. *See Thea v. Kleinhandler*, 807 F.3d 492, 494 (2d Cir. 2015). On January 8, 2019, Plaintiff was in a cell at the Manhattan Detention Complex. Dkt. No. 2 ("Compl.") at 4. At around 8:06 a.m., his cell door opened, and he exited his cell in order to investigate. *Id.* He saw Defendants Gonzalez, Dinicola, and Gerald escorting another inmate to the housing area. *Id.* Dinicola and Gonzalez saw him and approached Plaintiff. They then

---

[1] The Plaintiff's complaint lists Captain Gerald's name as "Captain Garald." But the Defendants' filings indicate that the Defendant's correct name is Natalia Gerald, *see* Dkt. No. 41. The Court will refer to the Defendant as Captain Gerald for purposes of this motion to dismiss.

threatened to "spray" Plaintiff if he moved.  *Id.*  Plaintiff put his hands up, and they sprayed him with O.C. spray, a kind of pepper spray.  At that point, Dinicola lifted Plaintiff and slammed him on the ground.  *Id.* at 5.  One of the Defendants kicked him and pinned him down with his foot until a "probe team" picked Plaintiff up from the ground.  *Id.* at 4–5.  As Plaintiff was being lifted from the ground, Dinicola used a pejorative term toward Plaintiff.  *Id.* at 5.  Following the incident, Plaintiff reported having "a ball on [his] back," along with back pain and neck pain.  *Id.*

Based on the foregoing allegations, Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983.

### B. Procedural Background

On July 2, 2019, Plaintiff filed a complaint against Defendants Gonzalez, Dinicola, and Gerald.  Dkt. No. 2.  All of the Defendants waived service on August 6, 2019.  Dkt. No. 10.  Defendants filed an Answer to the Complaint on November 14, 2019.  Dkt. No. 26.  On December 18, 2019, Magistrate Judge Ona T. Wang entered the parties' proposed case management plan and scheduling order, which established that Defendants were to file their anticipated motion for judgment on the pleadings by no later than January 15, 2020.  Dkt. No. 34.  Notwithstanding that they had already filed an Answer, on January 15, 2020, Defendants filed a motion to dismiss.  Dkt. No. 41.  The Court then issued an order on January 17, 2020 that gave Plaintiff the opportunity to amend his Complaint.  Dkt. No. 42.  Plaintiff then filed three letters—on January 17, 2020; January 22, 2020; and February 7, 2020.  Dkt. Nos. 43–45.  Defendants filed their reply memorandum of law on February 25, 2020.  Dkt. No. 46.

On April 30, 2020, Defendants filed a letter requesting that Plaintiff be allowed to supplement his opposition to the motion to dismiss and requesting a stay of discovery until the present motion is decided.  Dkt. No. 72.  Magistrate Judge Ona T. Wang granted that motion.

Dkt. No. 74.  Plaintiff then filed a series of letters, some of which referred to his inability to view the surveillance videos but others of which addressed the merits of the Defendants' motion.  *See* Dkt. Nos. 76, 80, 83–85.  On May 27, 2020, Defendants filed a supplemental reply memorandum of law in support of their motion.  Dkt. No. 86.

## II.     DISCUSSION

As a preliminary matter, the Court must address the proper procedural basis for Defendants' motion.  As already noted, Defendants filed an Answer to Plaintiff's Complaint on November 14, 2019.  Dkt. No. 26.  Then, after conducting an initial case management conference with the parties, Judge Wang entered the parties' proposed case management plan and scheduling order, which set a briefing schedule for Defendants to file their anticipated *motion for judgment on the pleadings* by no later than January 15, 2020.  Dkt. No. 34.  Defendants' January 15, 2020 motion, however, is styled as a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 37, 41.  But Rule 12(b) provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Because an Answer has been filed, the proper filing would have been a motion for judgment on the pleadings under Rule 12(c), as anticipated by the case management plan and scheduling order entered into the docket on December 18, 2019.  *See* Dkt. No. 34.  The difference between a Rule 12(b)(6) and Rule 12(c) motions "is largely academic because the standard under Rule 12(c) is the same as the standard under Rule 12(b)(6): Accepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party, judgment on the pleadings or dismissal for failure to state a claim should be granted if the moving party 'is entitled to judgment as a matter of law.'"  *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (citing *Burns*

*Int'l Sec. Servs., Inc. v. International Union,* 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).  In light of this, and in order to ensure that the case proceeds without further delay, the Court will construe Defendants' motion as a Rule 12(c) motion for judgment on the pleadings.

Defendants also request in their motion that the Court consider surveillance videos that Defendants submitted as exhibits to their motion.  They concede that "the videos enclosed as Exhibit C are not incorporated into the Complaint," but they assert that the videos "should be considered here because they are essential to a full understanding of the events underlying [plaintiff's] complaint, and [plaintiff cannot] . . . dispute their authenticity."  *See* Dkt. No. 41 at 1 n.1 (citation and internal quotation marks omitted).

The Court may not consider the videos at this juncture.  As Defendants note, the Complaint does not incorporate these videos.  Furthermore, there is no basis to conclude that these videos are integral or essential to the Complaint.  Courts in this district have expressed skepticism at such claims, emphasizing that extraneous videos documenting the events in question are not properly considered on a motion to dismiss unless the plaintiff relied upon the videos when drafting the complaint.  *See, e.g.*, *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719–20 (S.D.N.Y. 2015) (collecting cases) ("Because Gersbacher did not rely upon the videos in drafting the complaint, they are not integral to the complaint and cannot be considered in this Court's evaluation of the motion to dismiss."); *Pluma v. City of New York,* No. 13–CV–2017 (LAP), 2015 WL 1623828, at *3 (S.D.N.Y. March 31, 2015)) (declining to consider videos submitted by the defendants because the videos were neither incorporated by reference and the plaintiff did not rely on them in bringing his complaint).  *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the

document on a dismissal motion; mere notice or possession is not enough."). That standard is not met here. While the Court granted Defendants' request to allow the Plaintiff to supplement his opposition to their motion to dismiss with comments on the surveillance videos, *see* Dkt. No. 74, that does not change the Court's analysis as to whether the videos are properly understood as essential to the Complaint. Nor does the Court see any extraordinary circumstances that would justify premature consideration of these videos. Having concluded that the submitted videos are not properly presented to the Court for purposes of resolving this motion, the Court will not consider them.

Defendants also request that the Court "convert their motion to a motion for summary judgement under Federal Rule of Civil Procedure 12(d)," should the Court determine that the submitted videos are not properly before it on this motion. Dkt. No. 41 at 1 n.1. Whether to convert a motion to dismiss into a motion for summary judgment is left to the sound discretion of the district court. *See Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012). Rule 12(d) requires that the court or the non-moving party give "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir.1995). *See also McPherson v. Coombe,* 174 F.3d 276, 2828 (2d Cir.1999) ("[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 . . . he or she must be so informed by the movant in the notice of motion or, failing that, by the district court."). And pursuant to Local Rule 12.1, on January 15, 2020, the Defendants filed a notice that explained the consequences of the Court's conversion of the Defendants' motion into a motion for summary judgment; among other things, the Defendants attached to their Notice the full text of Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 40, Ex. 1. Nonetheless, in evaluating the parties' submissions, the

5

Court cannot conclude that Plaintiff fully understood, when he filed his supplemental opposition to the Defendants' motion, that responding to the motion and to the videos "would be his last chance to submit evidence" in support of his claims. *Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009). In any event, given the nature of the claims at issue, the Court deems the Defendants' arguments in support of conversion under Rule 12(d) insufficient.

As a result, the Court construes the Defendants' motion as a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In evaluating the sufficiency of the Defendants' motion, the Court will not consider extraneous materials submitted by the Defendants, including the surveillance videos of the incident in question, *see* Dkt. No. 39, Ex. C.

### A. Legal Standard

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Under Rule 12(c), judgment on the pleadings is proper if the material facts are undisputed and the moving party is entitled to judgment as a matter of law based on the contents of the pleadings. *See, e.g.*, *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988). Courts evaluate Rule 12(c) motions employing the familiar 12(b)(6) standard, "accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences in [the] plaintiffs' favor." *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir. 2009) (per curiam) (alterations omitted)). Thus, to survive a motion for judgment on the pleadings, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, when a plaintiff is proceeding *pro se*, the Court holds the pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). That is, the Court will liberally construe the complaint. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). Notwithstanding this, "the duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (alteration in original) (citation omitted). If a *pro se* plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

### B. Defendants' motion as to Captain Gerald is granted.

Defendants first argue that Plaintiff has failed to state a claim against Captain Gerald. Their primary argument is that Plaintiff failed to allege any facts supporting the claim that she was personally involved in the use of force against him. *See* Dkt. No. 41 at 4. The Court agrees.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Among other things, the personal involvement of an individual defendant can be established in a § 1983 violation if: "(1) the defendant participated directly in the alleged constitutional violation,

7

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Grazette v. Rockefeller*, No. 20-CV-0965 (AJN), 2020 WL 5237142, at *2 (S.D.N.Y. Sept. 2, 2020) (citing *Colon*, 58 F.3d at 873).

None of the facts that Plaintiff alleges in his Complaint support the proposition that Captain Gerald participated directly in the use of force against him. Nor does Plaintiff allege any facts to support the notion that, after being informed of the violation, Captain Gerald failed to remedy the wrong; that she created a policy or custom under which the use of excessive force occurred; that she was grossly negligent in supervising Dinicola and Gonzalez; or that she exhibited deliberate indifference to Plaintiff's rights by failing to act on information that unconstitutional acts were occurring. *See* Compl. at 4–5. Even construing Plaintiff's claims liberally and analyzing the Complaint under "less stringent standards" than the Court would a "formal pleading[] drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980), the Court concludes that the Complaint is deficient of facts that amount to a plausible claim regarding Captain Gerald's personal involvement in the use of force against him. Indeed, the Complaint mentions Captain Gerald only once, asserting that she was bringing the other inmate back to the housing area along with Gonzalez and Dinicola. *See* Compl. at 4. And in his opposition to the Defendants' motion to dismiss, Plaintiff concedes that Captain Gerald was not responsible for his "physical injuries." Dkt. No. 45 at 2. Plaintiff's concession that she was not involved in his

physical injuries further bolsters the Court's determination that the Complaint fails to allege facts that support Plaintiff's excessive force claim against Captain Gerald.

In his opposition to Defendants' motion, Plaintiff asserts that his claims against Captain Gerald stem from the "emotional injuries" he experienced in the aftermath of the incident. Dkt. No. 45 at 2. And he claims, for the first time, that Captain Gerald ordered that his property be destroyed, threatened Plaintiff, and disrespected his food. *Id.* These claims go well beyond any facts stated in the Complaint, as the Complaint focuses exclusively on the January 8, 2019 incident and his physical injuries that resulted from that incident. *See* Compl. at 4–5. "[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers." *Paul v. Bailey*, No. 09-CV-5784 (RO), 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013). But "[c]onsistent with the Court's obligation to construe claims made by *pro se* litigants liberally," the Court *may* "consider all of Plaintiff[']s factual allegations, including those made in opposition papers, as further amending his [Complaint]." *Id.* Still, the circumstances in this case do not justify such construal because, as Defendants assert, "plaintiff's assertions in his opposition go beyond supplementing or clarifying his excessive force allegations" and they "add entirely new categories of claims" to the excessive force claims that are at the core of the original complaint. Dkt. No. 46 at 2.

Moreover, the asserted new claims are too devoid of detail to state a claim that is "plausible on its face," *Twombly*, 550 U.S. at 570, even after all reasonable inferences have been drawn in Plaintiff's favor. Plaintiff alleges that Captain Gerald ordered that Plaintiff's property, including "legal work" and pictures, be destroyed; that Captain Gerald ordered that Plaintiff's food be disrespected, which the Court construes as referring to food tampering; and third, that Captain Gerald threatened him if he "call[ed] 311 or [his] family or anyone who [could help]

9

him." Dkt. No. 45 at 2. The filing alleges no facts regarding how Captain Gerald ordered the destruction of property or who in fact ended up destroying the property, other than that it was allegedly done by corrections officers, *see id.* at 2; provides no indication regarding how the food was "disrespected," and alleges no facts connecting Captain Gerald to the alleged food disrespect; and provides no information about the content of the alleged threats or when and where such threats were made. Even examining these claims under the "special solicitude" that applies when a litigant proceeds *pro se*, they are insufficient to state a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570; *see also Hill*, 657 F.3d at 122.

For these reasons, Plaintiff's claims against Captain Gerald are DISMISSED. Plaintiff was previously afforded the opportunity to amend his complaint, and he elected not to do so. *See* Dkt. No. 42. In addition, after briefing for this motion was otherwise complete, Plaintiff was given another opportunity to supplement his opposition. *see* Dkt. Nos. 74, 84. Because he has been given multiple opportunities to address his allegations against Captain Gerald, these claims are dismissed with prejudice.

## C. Defendants' Motion as to Defendants Dinicola and Gonzalez is Denied.

Defendants claim that Dinicola and Gonzalez are entitled to qualified immunity "because any use of force was objectively reasonable under the circumstances to ensure prison safety and security." Dkt. No. 41 at 4. They argue that "it is lawful for a correction officer to use force to maintain security and order" and that "their use of force was therefore objectively reasonable under the circumstances they faced when responding to plaintiff on January 8, 2019." *Id.* at 4–5.

The Court disagrees that Dinicola and Gonzalez are entitled to qualified immunity at this juncture.

"The Court may consider the issue of qualified immunity on a motion for judgment on the pleadings." *Smith v. Coughlin*, 727 F. Supp. 834, 839 n.7 (S.D.N.Y. 1989). "The doctrine of qualified immunity protects government officials from civil liability for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castillo v. Rodas*, No. 09-CV-9919 (AJN), 2014 WL 1257274, at *5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While "the qualified immunity defense is generally not available when a motion to dismiss is based on the pleadings . . . the motion may be granted where the complaint itself establishes the circumstances required for a finding of qualified immunity." *Colon v. Arrabito*, No. 97-CV-7146 (HB), 1998 WL 305636, at *2 (S.D.N.Y. June 9, 1998). As in the motion to dismiss context, "[n]ot only must the facts supporting the defense appear on the face of the complaint . . . but . . . the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)); *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) ("[B]ecause the standard of review is the same on a motion for judgment on the pleadings [as on a motion to dismiss] . . . the hurdle for the defendants here is similarly formidable."). As a result, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

The Court concludes that Defendants' qualified immunity defense is premature. Discovery in this matter has not yet closed. Many of Defendants' arguments focus on the fact

11

that the use of force is lawful in the context of maintaining security and order. *See* Dkt. No. 40 at 4–8. But their argument misses the crux of Plaintiff's claim: Whether the use of force was *excessive*. And "[a] prisoner's right to freedom from excessive force by prison officials is a clearly established constitutional right." *Allen v. City of New York*, 480 F. Supp. 2d 689, 710 (S.D.N.Y. 2007). Even when a right is clearly established, however, "a government official is still entitled to qualified immunity if 'it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'" *Id.* (citing *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir. 2001)). As Defendants note, the objective analysis turns on the "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citation omitted); *see also* Dkt. No. 41 at 6. It requires that a court account for the "legitimate interests that stem from [an institution's] need to manage the facility in which the individual is detained," with due deference to officers' judgment as to what is "needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Objective reasonableness "is established if 'the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality' of the official's actions." *Allen*, 480 F. Supp. 2d at 710 (citing *Cerrone*, 246 F.3d at 203). Typically, a plaintiff will not recover on a § 1983 claim if a Defendant is able to show that officers "used necessary force in a good faith effort to maintain order and security." *McKinney v. Dzurenda*, 555 F. App'x 110, 111–12 (2d Cir. 2014). But "[d]ismissal on the basis of a qualified immunity defense is not appropriate where 'there are facts in dispute that are material to a determination of reasonableness.'" *Sereika v. Patel*, 411 F. Supp. 2d 397, 407 (S.D.N.Y. 2006) (citing *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir. 1999)). Such is the case here.

In support of their qualified immunity argument, Defendants argue that "it is lawful for a correction officer to use force to maintain security and order" and "their use of force was therefore objectively reasonable under the circumstances they faced when responding to plaintiff on January 8, 2019." Dkt. No. 41 at 4–5.  In certain respects, they rely on the surveillance videos to argue as to objective reasonableness, *see* Dkt. No. 41 7–8; as the Court has noted, however, the Court will not consider the videos at this juncture.  In any event, their description of the relevant facts does not support a finding of qualified immunity at this juncture.  Defendants argue that "C.O.s Gonzalez and Dinicola . . . reasonably believed that plaintiff's actions compromised not only their safety, but the safety and security of everyone in the cell block, and were therefore justified in their use of force to restrain him," and that "[o]nly in response to that threatened aggression were C.O.s Gonzalez and Dinicola forced to respond to plaintiff's aggressive actions by attempting to bring him under control, using O.C. spray to protect themselves." *Id.* at 8.  But Defendants' quest for qualified immunity turns on whether they reasonably believed both that the use of force was necessary and that the *level* of force used was necessary.  Such conclusions, based on the facts asserted in the pleadings, are premature, particularly where, as here, the Plaintiff "is entitled to all reasonable inferences from the facts alleged[, including] those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the facts alleged in the pleadings do not establish as a matter of law that either the use of force or the level of force actually used was objectively reasonable.  Defendants would have the Court resolve several inferences in their favor, including that Plaintiff "threatened to attack" Dinicola and Gonzalez, *see* Dkt. No. 41 at 8, and that the level of force used—which, according to the Complaint, included not just the O.C. spray but also "slamm[ing]" Plaintiff to the ground and

13

kicking him, *see* Compl. at 5—was reasonably believed to be "rationally related to" restoring peace and security. Dkt. No. 41 at 8. Of course, "[o]fficers are not required to wait until they are actually assaulted by an inmate before taking action[, and] if they perceive a threat to safety and security in the prison, including their own safety, they are permitted to use force to restore order." Dkt. No. 46 at 4. But that alone does not resolve whether the use of force was appropriate in *this* circumstance and whether the level of force used was excessive, or whether Defendants' belief to that effect was reasonable. These questions, which go to the heart of Plaintiff's excessive force claims and Defendants' qualified immunity defense, cannot be resolved at such an early stage in the litigation. For this reason, the Defendants' motion as to the claims against Defendants Dinicola and Gonzalez is denied without prejudice to renewal at a later stage in the litigation.

### III. CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings as to Defendants Dinicola and Gonzalez is DENIED. The motion as to Captain Gerald is GRANTED. The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The parties shall resume discovery under the supervision of Magistrate Judge Wang. The Clerk of Court is respectfully directed to mail a copy of this Order to the *pro se* litigant and to note its mailing on the public docket.

SO ORDERED.

Dated: November 30, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge